# Joy vs. Foss.

Where the promissor in a note payable in specific articles performed services for the holder, which were accepted in payment of the note; after which the holder sold it to a third person;—it was held that the promissor could not maintain an action for the value of his services, they still constituting a good defence to an action on the note.

This was *assumpsit* for work and labor; and it came up by exceptions taken by the defendant to the opinion of *Whitman C. J.* before whom it was tried in the court below.

It appeared by the record sent up, that the defendant was the holder of a promissory note which the plaintiff had given to one *Libby*, payable in specific articles; that the labor was performed by the plaintiff for the defendant, in payment of the note, "and that the note was paid by said labor;" after which the defendant sold the note to one *Woodsum*. And the Judge ruled that this sale of the note gave to the plaintiff a right of action for the value of his labor. To which the defendant excepted; the jury having found for the plaintiff.

*Wells,* in support of the exceptions, argued that the note, being paid, was *functus officio,* and could not be the foundation of any further claim against the plaintiff; who therefore had no right of action for the services by which it had been paid. *Tucker v. Smith,* 4 *Greenl.* 415; *How v. Mackie,* 5 *Pick.* 44; *Wilby v. Harris,* 13 *Mass.* 496.

*Boutelle,* for the plaintiff, contended that the defendant, by selling the note, had deserted the contract of payment, and was estopped now to set it up as a defence against an action for the value paid. And he likened it to the case of money paid, but not indorsed, on a promissory note, the whole amount of which was afterwards recovered, and collected on execution. *Goodrich v. Laflin,* 1 *Pick.* 57; *Thurston v. Percival, ib.* 415; 2 *Phil. Evid.* 83, *note;* 1 *Dane's Abr.* 221, 229.

Joy v. Foss.

The opinion of the Court was delivered at the ensuing term in *Penobscot,* by

Parris J. The case finds that the labor charged in the plaintiff's account was performed by him in payment of a note which the defendant as assignee then held against him, "and that the note was paid by said labor." The note being payable in specific articles, was not assignable by indorsement as a bill of exchange; and consequently, whatever payments might have been made to the original promisee, while it remained in his possession and until notice of the assignment, would avail the promissor in defence of any action that might be prosecuted on it, either for the benefit of the promisee or any subsequent assignee.

It is familiar law that the assignment of a *chose in action* passes the equitable interest in the debt immediately to the assignee, and, as between the parties to the assignment, the assignor has no right thereafter to control it. But, until the debtor has notice of the assignment, he may safely make payment to the promisee. Upon assignment, the assignee takes it, subject to all the equity existing between the debtor and creditor in relation to the debt assigned, not only at the time of the assignment, but until the debtor has notice. The assignment operates as a new contract between the debtor and assignee, commencing upon notice of the assignment, by which the promissor becomes the debtor of the assignee, to the amount of what was equitably due the assignor. As the assignee thus succeeds to all the equitable rights of the original creditor, he alone has power to compel payment and give discharge, and whatever payments are made to him, while he holds the evidence of indebtedness, operate as effectually a discharge of the debt, as if made to the original creditor.

The party who makes a payment has a right to apply it as he chooses. If he does not apply it, the party who receives it may make the application. But the application once made, he who receives has no power to change it; he who pays, none to withdraw it.

In applying these principles to the case before us, we are led to inquire wherefore this suit is prosecuted. Wherein has the plaintiff sustained injury. He has paid the defendant a note which he justly owed him. The defendant had a right to receive it; and having received the labor in payment of the note, as the case finds he did, the note was discharged, and it is now too late for the plaintiff to change the appropriation of his payment. It might operate unjustly if he could. There may have been reasons influencing the defendant to accept the labor in payment of the note, when he would not have received it and render himself answerable therefor in cash.

It is contended by the plaintiff's counsel that both parties having departed from the special contract, it is consequently no longer binding, and that *Joy* may, therefore, claim the value of his labor of *Foss*, and *Woodsum* the amount of the note of *Joy*. The cases cited in support of this argument all apply to an executory contract, which may, undoubtedly be rescinded by the parties at any time before its execution. But when executed it is not to be revived by any rescinding of, or departure from its provisions. The parties may make a new contract, but the old one having been executed, is *functus officio*. As in *Stephens v. Wilkinson*, 2 *Barnw. & Ald.* 320. The purchaser of goods paid part of the purchase money, and gave the bill on which the action was brought for the remainder; he had possession of the goods delivered to him, kept them for two months, and was then dispossessed by the vendor. It was held that this constituted no defence, the contract was not rescinded, and the remedy for the dispossession was by trespass.

It is not perceived how the transaction between *Foss* and *Woodsum* can affect a contract executed between *Joy* and *Foss*. Besides, it is not pretended that *Joy* has paid *Woodsum* any thing on the note, and it does not appear that he has been or ever will be called upon to pay it. It would seem to be sufficiently early for him to move when he has sustained, or at least, become liable to injury.

From the exceptions it appears that the proof of payment came from the plaintiff, of course he has it in his power to prove it again;

58

and whenever proved, as it was in the court below, it will be abundantly sufficient to protect him against any suit that may be brought on that note, either by the defendant or his assignee.

If *Foss* has practised deceitfully and dishonestly with *Woodsum*, what cause is that for the plaintiff's interference. If the note had been paid when *Foss* passed it to *Woodsum*, it was thereby discharged. There was no longer any subsisting contract between the promissor and the first assignee. *Foss* had no claim, either legal or equitable, against the plaintiff, and of course could assign none to *Woodsum*.

When *Woodsum* purchased the note, it was his business to have ascertained what claims the debtor had upon the promisee or any previous assignee, that might diminish or destroy its value. This he might readily have done by application to the debtor. If he neglected to do this, he must have purchased it principally upon the credit of the defendant, the party from whom he received it, and if he has been deceived by *Foss*, he, *Woodsum*, would seem to be the person to complain, rather than the plaintiff, around whom the law throws its full protection.

As the case finds that " the note was paid by the labor," we do not perceive how the plaintiff can be allowed for it again. If, as was suggested at the argument, the exceptions state the case relative to payment stronger than the proof justified, the plaintiff will have an opportunity of correcting it on a new trial.

*The exceptions are sustained, and a new trial granted.*